# United States District Court, Southern District Of Texas,

**515 Rusk Ave., Houston,Texas , 77002,  Phone: 713.250.5500**

**Plaintiffs  request  Jury Trial       Judge:**

**Plaintiffs:  {1} Plaintiff  Kenneth MacKenzie, {PL. 1}, 2314 Gentry St., Houston, Texas 77009, brother of Isabel Lopez, representing the Estate of deceased Isabel Lopez,  {2} Plaintiff  Debbie Gallegos, {PL. 2}, Daughter of Isabel Lopez, {3} Plaintiff  Alex Lopez, {PL. 3}, 11019 Pinecone Ln, Houston, TX 77041, Son of Isabel Lopez, {4} Plaintiff  Joe Lopez, {PL. 4}, 11019 Pinecone Ln, Houston, TX 77041, Son of Isabel Lopez, Plaintiffs (hereinafter: PL #1 through PL #4)**

**Versus**

**DEFENDANTS: Defendant { Df. 1}, US Department Of Justice,  U.S. Attorney,  Attorney General of the United States,  950 Pennsylvania Avenue, NW. Washington, DC 20530-0001 { Office of Legal Counsel, Don McGahn, 1600 Pennsylvania Ave** NW, Washington, DC 20500}.

. . . . . . . . . . .

**... Defendant { Df. 2} US Department of Treasury, 1500 Pennsylvania Ave. , NW. Washington, DC 20220**

. . . . . . . . . . .

**...Defendant { Df. 3}, US Department of Defense,**

1919 Smith St, Houston, TX 77002, **Phone:** (713) 227-7263

US Defense Department, Address: Department executives: Jim Mattis, <u>Secretary</u>,  **Washington, DC** 20301-1400. **U.S. Department of Defense (DoD)**, Washington, District of Columbia. 1622040

. . . . . . . . . . .

Official Main; mLSLizLiz 15Ag2018(3 ;                                                    **Pg  2**

..Defendant { Df. 4} US Department of Veterans Affairs 810 Vermont Ave NW, Washington, DC 20571,

Defendant, U.S. Department of Veterans Affairs, DeBakey Hospital Medical Center, 2002 Holcombe

Blvd, Houston, Texas 77030, a collection point for US Naturalized Citizens, Previously Citizens of

Foreign Countries, numbering {a} Hostile VA employees antagonistic against US Veterans

Defendant { Df. 5} US Department of Veterans Affairs Police Department,  DeBakey Hospital Medical

Center, 2002 Holcombe Blvd, Houston, Texas 77030, US Department of Veterans Affairs Police

Department, 810 Vermont Ave NW, Washington, DC 20571, **a collection point for US Naturalized**

**Citizens, Previously Citizens of Foreign Countries, numbering {a} Hostile VA employees antagonistic**

**against US Veterans**

...Defendant { Df. 6} Goldman Sachs, 1000 Louisiana St. #500, Houston, Texas 77002, Phone:

713.654.8400, banking house for Estate of Muammar Gaddafi.

Defendant { Df. 7} JP Morgan Banks, USA, 712 Main Street, Houston, TX 77002, Phone:

713.216.3773, 1.800.935.9935, banking house for Estate of Muammar Gaddafi

Defendant { Df. 8} JP Morgan Banks, South Africa, Contact Information:: .. {{1}} JPMorgan Chase Bank,

National Association, Johannesburg Branch operates as a subsidiary of JPMorgan Chase Bank, National

Association.  1 Fricker Road  Corner Hurlingham Road  Illovo  Johannesburg,  2196  South Africa, **banking**

**house for Estate of Muammar Gaddafi**;

Contact Information::  {{2}} **JP Morgan Banks, 1 Z. Fricker Rd Illovo (Use Sandton As**

**Town),Johannesburg,Gauteng,South  Africa, banking house for Estate of Muammar Gaddafi;**

Official Main: mLSLizLiz 15Ag2018(3 ;                                                Pg 3

.. {{3}}  JP Morgan Banks, PRIMEGRO OFFICE PARK 42/30,Tonnetti Street Halfway House, Midrand, Gauteng, South Africa, banking house for Estate of Muammar Gaddafi

. . . . . . . . . . . .
Defendant { Df. 9} Estate of Deceased **Libya Terrorist, Prime Minister Muammar al-Gaddafi  (Gaddafi violently murdered by Libyan Citizen revolutionaries 30 Oct 2011), a.k.a.: GHATHAFI, Muammar (a.k.a. AL-GADDAFI, Muammar; a.k.a. AL-QADHAFI, Muammar; a.k.a. AL-QADHAFI, Muammar Abu Minyar; a.k.a. ELKADDAFI, Muammar; a.k.a. EL-QADDAFI, Muammar; a.k.a. GADDAFI, Mu'ammar; a.k.a. GADDAFI, Muammar; a.k.a. GADHAFI, Muammar; a.k.a. GHADAFFI, Muammar Muhammad; a.k.a. QADDAFI, Muammar; a.k.a. QADHAFI, Muammar); DOB 1942; POB Sirte, Libya (individual) [LIBYA2] of Libya**

. . . . . . . . . . . .
Defendant { Df. 10} ..**Muammar Qaddafi (deceased), a.k.a.: GHATHAFI, Muammar (a.k.a. AL-GADDAFI, Muammar; a.k.a. AL-QADHAFI, Muammar; a.k.a. AL-QADHAFI, Muammar Abu Minyar; a.k.a. ELKADDAFI, Muammar; a.k.a. EL-QADDAFI, Muammar; a.k.a. GADDAFI, Mu'ammar; a.k.a. GADDAFI, Muammar; a.k.a. GADHAFI, Muammar; a.k.a. GHADAFFI, Muammar Muhammad; a.k.a. QADDAFI, Muammar; a.k.a. QADHAFI, Muammar); DOB 1942; POB Sirte, Libya (individual) [LIBYA2].**
his estate  represented by his personal representative named: Mohamed Ali El Huwej  representing the "Estate of Prime Minister Muammar al-Gaddafi" (Gaddafi was violently murdered by Libyan Citizen revolutionaries 30 Oct 2011)  of Libya, Gaddafi's estate also known as said new "sovereign wealth fund" under incorporated name listed as "Libyan Investment Authority" – "LIA" of Libya, also known as "Libyan Investment Authority" – "LIA." The "LIA" internet address is:

https://www.globalwitness.org/sites/default/files/library/libyan%20investment%20authority%20funds%20as%20of%20september%202010.pdf

Official Main; mLSLizLiz 15Ag2018(3 ;                                           **Pg  4**

Mohamed Ali El Huwej is known as "Muammar- Qaddafi's-moneymanager" as listed at the publication named as: *The Malta Financial and Business Times*, 07 nov 2001, with an internet address of:

http://www.businesstoday.com.mt/2001/1107/focus.html   and a second representative for **the Estate of Prime Minister Muammar al-Gaddafi is named as CONTACT ADDRESSES:**

http://www.telegraph.co.uk/news/politics/tony-blair/8772418/Tony-Blair-visited-Libya-to-lobby-for-JP-Morgan.html

. . . . . . . . . . . .

...Defendant { Df. 11} Mohammed Layas, head of the LIA, 22nd Floor Tripoli Tower, Tripoli, Libya, since 2006, has been President and Chief Executive Officer of the Libyan Investment Authority (**LIA**).

"Libyan Investment Authority" – "LIA," a "nation of Libya Sovereign Wealth Fund" (founded 2006), **Headquarters at  22nd Floor Tripoli Tower, Tripoli, Libya**; Secretary Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:  info@lia.com.mt ; claire.davidson@drdpartnership.com** ; Website: http://www.lia.com.mt/;  http://www.lia.com.mt/en/news/

This "LIA"  Media Information Hub provides its services in English, Arabic and French and is available 24 hours a day.

. . . . . . . . . . . .

...Defendant { Df. 12} CONTACT ADDRESSES: Kelany Abd Elkreem Elgazy, Manager,  Postal Address: **26 St Barbara Bastions, Valletta VLT 1961,** info@ect.gov.ly ; http://www.ect.gov.ly/ Phone: 0213620146, Abd Elkader Mohamed Ahmed, info@ctt.gov.ly,  http://www.ctt.gov.ly, Phone: 02133416700213335896 Malta; Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:  info@lia.com.mt** ; **claire.davidson@drdpartnership.com** ; Website: http://www.lia.com.mt/;  http://www.lia.com.mt/en/news/

. . . . . . . . . . . .

Defendant { Df. 13}  (2) CEO, **Mohamed Ali El Huwej who was & is Qaddafi's money manager at Malta: "Libyan Investment Authority" – "LIA," Libya Sovereign Wealth Fund,"** Founded 2006, Fund

Official Main; mLSLizLiz 15Ag2018(3 ;                                           **Pg  4**

management, Oil and gas, 26 St. Barbara Bastions, Valletta, Malta, Products: **Postal Address:** 26 St Barbara

Bastions, Valletta VLT 1961, Malta; **Address #1 & #2: P.O. Box 5178 LY-Tripoli, Libya**

**Claire Davidson** at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:  info@lia.com.mt** ;

**claire.davidson@drdpartnership.com** ; Website: http://www.lia.com.mt/;  http://www.lia.com.mt/en/news/

The Media Information Hub provides its services in English, Arabic and French and is available 24 hours a

day. **http://www.businesstoday.com.mt/2001/1107/focus.html  . Address #1 & #2: P.O. Box 5178 LY-**

**Tripoli, Libya , info@lncsm.org.ly ; www.lncsm.org.ly;**

**http://www.lncsm.org.ly/saturn_8870/lncsm.html ;   Phone: +218 21 462 72 80+218 21 463 08 85 ;**

**Phone: 0021821481200200218214812002**

**https://www.globalwitness.org/sites/default/files/library/libyan%20investment%20authority%20funds**
**%20as%20of%20september%202010.pdf**

**Address #1: P.O.Box : 4212 , Tripoli , Libya, Info@raba.ly ; http://www.raba.ly/specifications.php**
**https://www.globalwitness.org/sites/default/files/library/libyan%20investment%20authority%20funds**
**%20as%20of%20september%202010.pdf**

. . . . . . . . . . . .

 **Defendant { Df. 14} Libya Ministry Of Foreign Affairs**, National; Minister of Foreign Affairs  Mohamed

Abd Elaziz,  info@foreign.gov.ly, www.foreign.gov.ly

Phone: +2 1821 340 2921 – 22 ;      +2 18 21340 0461

. . . . . . . . . . . .

**Defendant { Df. 15} Claire Davidson Qaddafi's money manager at Libya: "Libyan Investment**

**Authority" – "LIA," Libya Sovereign Wealth Fund,"** Founded 2006, **Headquarters,  22nd Floor Tripoli**

**Tower, Tripoli, Libya; Claire Davidson** at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:**

**info@lia.com.mt ; claire.davidson@drdpartnership.com** ;

Website: http://www.lia.com.mt/;  http://www.lia.com.mt/en/news/



The Media Information Hub provides its services in English, Arabic and French and is available 24 hours a day.

· · · · · · · · · · · ·

**Defendant {Df. 16} Board of Trustees of "Libyan Investment Authority" – "LIA" is: Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta; Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:  info@lia.com.mt ; claire.davidson@drdpartnership.com** ;

· · · · · · · · · · · ·

**Defendant { Df. 17} Abdullah Althni,  Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta; Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:  info@lia.com.mt ; claire.davidson@drdpartnership.com** ; **"LIA" Chairman of "Libyan Investment Authority" – "LIA" – Prime Minister of Libya   Government**

· · · · · · · · · · · ·

**Defendant  { Df.1 8} Kamil Moamen,  Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta; Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:  info@lia.com.mt ; claire.davidson@drdpartnership.com** ; **"LIA" Member of "Libyan Investment Authority" – "LIA" – Minister of Finance and Planning of Libya Government**

· · · · · · · · · · · ·

**Defendant  { Df. 19} Monir Ali, "LIA" Member of "Libyan Investment Authority" – "LIA" – Minister of Economy and Industry of Libya   Government, Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta; Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:  info@lia.com.mt ; claire.davidson@drdpartnership.com**

· · · · · · · · · · · ·

**Defendant  { Df. 20}  Ali Alhibri, "LIA" Member of "Libyan Investment Authority" – "LIA" – Central Bank Governor of Libya  Government, Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta;



Claire Davidson at **+4444 (0)207 520 9215 or +44 (0)7767 351433; email address:  info@lia.com.mt** ;

**claire.davidson@drdpartnership.com**

. . . . . . . . . . . .

**Defendant  { Df. 21} Gomah Yones, "LIA" Member of "Libyan Investment Authority" – "LIA" –**

**Independent Member of Libya  Government, Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961,

Malta; Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:  info@lia.com.mt** ;

**claire.davidson@drdpartnership.com**

. . . . . . . . . . . .

**Defendant   { Df. 22} current "LIA" Board of Directors of "Libyan Investment Authority" – "LIA" in**

**its entirety of the "LIA"  is: Defendant  "LIA" Board of Directors** composed of seven directors, **Postal**

**Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta; Claire Davidson at **+44 (0)207 520 9215 or +44**

**(0)7767 351433; email address:  info@lia.com.mt** ; **claire.davidson@drdpartnership.com**:

. . . . . . . . . . . .

 **Defendant   { Df. 23}  "LIA" Chairman Hassan Bouhadi, Postal Address:** 26 St Barbara Bastions,

Valletta VLT 1961, Malta; Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:**

**info@lia.com.mt** ; **claire.davidson@drdpartnership.com** – Appointed as member of the**"LIA"  Board of**

**"Libyan Investment Authority" – "LIA"** on 10 February 2014 and subsequently **appointed as "LIA"**

**Chairman of "Libyan Investment Authority" – "LIA" on 11 October 2014**

. . . . . . . . . . . .

**Defendant   { Df. 24}** Ahmed Attiga **Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta;

Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:  info@lia.com.mt** ;

**claire.davidson@drdpartnership.com** – Appointed as **"LIA"**  member of the Board **of "Libyan Investment**

**Authority" – "LIA"** on 5 March 2013

. . . . . . . . . . . .

**Defendant**   **{ Df. 25}** Ali Mahmoud **Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta;

Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:** **info@lia.com.mt** ;

**claire.davidson@drdpartnership.com** – Appointed as **"LIA"**  member of the Board **of "Libyan Investment**

**Authority"** – **"LIA"** on 10 November 2013

. . . . . . . . . . .

**Defendant**   **{ Df. 26}** Faisal Gergab **Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta;

Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:** **info@lia.com.mt** ;

**claire.davidson@drdpartnership.com** – Appointed as **"LIA"**  member of the Board **of "Libyan Investment**

**Authority"** – **"LIA"** on 5 March 2013

. . . . . . . . . . .

**Defendant**   **{ Df. 27}** Osama Siala **Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta; Claire

Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:** **info@lia.com.mt** ;

**claire.davidson@drdpartnership.com** – Appointed as **"LIA"**  member of the Board **of "Libyan Investment**

**Authority"** – **"LIA"** on 11 October 2014

. . . . . . . . . . .

**Defendant**   **{ Df. 28}** Fakher Buferna **Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta;

Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:** **info@lia.com.mt** ;

**claire.davidson@drdpartnership.com** **Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta;

Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:** **info@lia.com.mt** ;

**claire.davidson@drdpartnership.com** – Appointed as **"LIA"**  member of the Board **of "Libyan Investment**

**Authority"** – **"LIA"** on 3 November 2014

. . . . . . . . . . .

**Defendant**   **{ Df. 29}** Idris Lahimer **Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta;

Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address:** **info@lia.com.mt** ;



**claire.davidson@drdpartnership.com** – Appointed as **"LIA"** member of the Board **of "Libyan Investment Authority" – "LIA"** on 3 November 2014

. . . . . . . . . . .

**...LIST OF TERRORIST ORGANIZATIONS:**

. . . . . . . . . . .

**Defendant { Df. 30} "Muammar al Gaddafi's AL Shura Council Terrorism Organization of Libya, Headquarters, 22nd Floor Tripoli Tower, Tripoli, Libya" ; Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta; Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address: info@lia.com.mt ; claire.davidson@drdpartnership.com**

. . . . . . . . . . .

**Defendant { Df. 31} Muammar al Gaddafi's Libyan Islamic Fighting Group Terrorism Organization of Libya , Headquarters, 22nd Floor Tripoli Tower, Tripoli, Libya; Postal Address:** 26 St Barbara Bastions, Valletta VLT 1961, Malta; Claire Davidson at **+44 (0)207 520 9215 or +44 (0)7767 351433; email address: info@lia.com.mt ; claire.davidson@drdpartnership.com, Officially designated as Terrorist Organization by United Nations, USA, and UK.**

. . . . . . . . . . .

**Defendant { Df. 32} Muammar al Gaddafi's al-Jama'a al-Islamiyya Terrorism Organization of Libya , Officially designated as Terrorist Organization by Canada, EU, USA, UK .**

. . . . . . . . . . .

**Defendant { Df. 33} Islamic State of Iraq and the Levant – Libya Province, Terrorism Organization of Libya, Pakistan, Iraq, USA, Europe, Africa - Officially designated as Terrorist Organization by USA https://en.wikipedia.org/wiki/List_of_designated_terrorist_groups**

. . . . . . . . . . .

Defendant { Df. 34} al Queda, Terrorism Organization of Libya,  Pakistan, Iraq,  USA, Europe, Africa (hereinafter: Df. #1 through Df. #34)

. . . . . . . . . . . .

TABLE OF CONTENTS … PG 24:

. . . . . . . . . . . .

TABLE OF CONTENTS:. . .Pg 24

TABLE OF CONTENTS: Caption of Case and list of Plaintiffs and Defendants . . Pg 1 to Pg 24

US government Department of Veterans Affairs potential of Terrorism Sympathizers within the US government Department of Veterans workforce to apply an active and / or a passive fright and fear affect against families of Veterans. The very suspicion that there are Terrorism Sympathizers within the work force of the US department of Veterans Affairs is more than sufficient to create a reaction of "Fright and Fear" within Veteran Patient families.

TABLE OF CONTENTS: Statement  of the Case . . . Pg. 25

TABLE OF CONTENTS: Damage Pleadings of the Case . . . Pg. 43 - 49

TABLE OF CONTENTS:..TERRORISM FRIGHT AND FEAR PHYSIOLOGICAL EFFECTS of *"butterflies in the stomach"*  (dyspepsia) in Fright and Fear nausea-reaction to Terrorism Fright and Fear conditions manipulated by terrorism entities and US government simultaneously, terrorists applying death-threat fright and fear, while, US government denies protection of terrorism-Victim children and terrorism-Victim families of terrorist death-threat fright and fear consequences. . .  Pg. 50 - 51

TABLE OF CONTENTS: Enclosed Appendix Documents of the Case . . . Pg. 49 - 53

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

Official Main: mLSLizLiz 15Ag2018(3 ;                                     **Pg  11**

TABLE OF CONTENTS: Statement  of the Case:   Pg 24

[ End TABLE OF CONTENTS:]

STATEMENT  OF THE CASE

. .1 . This case describes Terrorism applied against Isabel Lopez, a Terrorism damaged and threatened citizen of the United States, damaged and threatened by various Terrorism groups and terrorism supporting states; and this case describes the manipulations perpetrated  by the US government Department of Justice to deny the protections of 18 USC 3521 to US terrorism Victim Families in such a way as to cause manipulation-consequences of "terrorism-fright-and- fear-threatened-death" caused by said various Terrorism groups and terrorism supporting states against Isabel Lopez, who was denied by US Department of Justice employees, apparently in violation of 18 U.S. Code § 1513 - Retaliating against a witness, victim, or an informant, the protection provisions of 18 USC 3521.

..2. As a consequence of both {1} terrorist death threats and {2} US Department of Justice employee denied protection of US Department of Justice provision of 18 USC 3521, there are currently dynamics operating to create a US government Department of Veterans Affairs potential of Terrorism Sympathizers within the US government Department of Veterans workforce who are applying an active and / or a passive fright and fear affect against families of Veterans by actively interfering with and manipulating denials of medical care that eventually cause death to US Veterans by the hundreds of thousands {300,000 dead Veteran Casualties of denied medical care were  announced by Presidential Candidate Trump in the year 2015}.

3.. Said 300,000 dead Veteran Casualties of denied medical care as announced by President Trump convinced  Isabel Lopez that there were Terrorists operating within the **US Department of Veterans Affairs** and that her family might be a target of wrongdoing perpetrated by said **"foreign Immigrants 'Naturalized' in the USA to become US Citizens,"** many of whom are **Terrorist Sympathizers;** furthermore, many of

these unvetted **Terrorist Sympathizers** who are not vetted may be discovered, when they are finally "vetted," as former **Terrorists among the Citizens of several foreign countries** currently operating inside the **US Department of Veterans Affairs, manipulating medical care denials and manipulating medical delays comparable to German Third Reich Auschwitz Death Camps or manipulating medical delays comparable to ISIS terrorism infiltration-sabotage of US government Department of Veterans Affairs Medical Centers.. Isabel Lopez's death was caused by a willful and deliberate act of extrajudicial killing very much related to FBI Directors Mueller's and FBI Director Comey's denial of 18 USC 3521 – Relocation & Protection. Both FBI Directors Mueller's and FBI Director Comey's denial of 18 USC 3521 ignored the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca in  FBI Director Mueller's and FBI Director Comey's denial of 18 USC 3521 – Relocation & Protection – that operated to expose as targets to Jihad terrorists in the US, the family Children, Women, and men of the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca. Both FBI Director Mueller and FBI Director Comey exposed the Menchaca Family to Terrorism increased likelihood of terrorism attack to make Terrorism-retaliation-attack-examples of Children, Women {Isabel Lopez}, and men of the al- Queda-Terrorism death-threatened Family of al- Queda and Gaddafi's Libya al-Shura-tortured-to-death US Army PFC Christian Menchaca..**

**Isabel Lopez directly and indirectly experienced Terrorism Fright and Fear Physiological effects of** *"butterflies in her stomach"* **(dyspepsia) in Fright and Fear nausea-reaction (dyspepsia) to Terrorism Fright and Fear conditions manipulated by terrorism entities and US government { manipulated by FBI Directors Mueller's and FBI Director Comey's "homicidal-life-destroying" denial of 18 USC 3521 – Relocation & Protection} simultaneously applied denials of 18 USC § 3521, simultaneously, while terrorists were applying death-threat-fright-and-fear, while, "US-government-denied-protection-of-terrorism-Victim children and terrorism-Victim families of terrorist death-threat-fright-and-fear**

consequences struggled to face the consequences of Directors Mueller's and FBI Director Comey's "homicidal" denial of 18 USC 3521, which operated a "homicidal-life-destroying" denial of 18 USC 3521 to effectivel strike Fright-and-Fear into the Psyches of US  terrorism-Victim children and terrorism-Victim families of Directors Mueller's and FBI Director Comey's manipulated terrorist death-threat fright and fear consequences.

4.. The very suspicion that there are Terrorism Sympathizers within the work forces of the US department of Veterans Affairs is more than sufficient to create a reaction of "Fright and Fear" within Veteran Patient families.

5.. Plaintiffs were denied US Department of Justice provision 18 USC 3521 by US Department of Justice employees apparently in violation of 18 U.S. Code § 1513 - Retaliating against a witness, victim, or an informant, unconstitutionally  applied by US Department of Justice applying criminal wrongdoing in US Department of Justice perverse "retaliation administered by the US Attorney General during 19 June 2006 through 18 Aug 2016 (the date of Isabel Lopez's death) to deny Victim / Witness Relocation and Protection" that becomes visible when the repetitive patterns of {1} US Department of Justice deliberate application of denials of 18 USC 3521 are understood.

6...Victim Isabel Lopez (a sister of Kenneth MacKenzie, who is married to Julieta Vasquez, the Aunt of US Army PFC Kristian Menchaca, tortured to death by Muammar Gaddafi's paid mercenaries, known as al Shura Council operating together with Ussama Bin Ladin's al Queda of Iraq was denied 18 USC 3521 – Relocation & Protection – provisioned by Defendant, US Department of Justice during the entire time she was a victim of Middle East Terrorism in violation of 18 USC 2339 A and 2339 B – Patriot Act, applied by (4) Terrorist Muammar Gaddafi until his date of death and by (5) Libya Republic under De Facto Control of Muammar Gaddafi acting and existing in fact but without Libya government legal sanction as Gaddafi had resigned his position as Prime Minister of Libya under the laws of Libya and assumed the self-created position of "Advisor" to the nation of Libya, when, in fact, Gaddafi operated

Official Main; mLSLizLiz 15Ag2018(3 ;

as a Terrorist in the Nation of Libya against other foreign States, while he hired and paid "Libyan Mercenaries" to deploy in terrorism operations to attack targets in Iraq and the United States and attack targets in other countries.

7. Operative Terrorist Sympathizers are working as employees of DeBakey Hospital,USVAMC, Houston, Texas, of Defendant Libya Terrorist, Prime Minister Muammar Gaddafi of Libya (deceased).

8.. Plaintiff Kenneth MacKenzie: {1} incorporates by reference as if fully set forth, herein, his Petition For Writ Of Certiorari that he filed In The United States Supreme Court, 28 Dec 2016, docket number not yet issued, {2} incorporates, herein, his Appeal in the Fifth Circuit Court of Appeals, New Orleans LA, Case: 15-20667, that he filed 2016,

9.incorporates herein his Lawsuit Complaint that he filed in United States District Court for the Southern District of Texas, File No. Misc. Action  No. 4:15-MC-01974, dismissed 30 Sep 2016, all incorporated, herein, as if fully set forth in this Claim For Damages, Injury, or Death.

10. All Plaintiffs, including Kenneth MacKenzie, incorporate, herein, this Lawsuit Complaint all Claims that Kenneth MacKenzie previously filed on US Claim Form 95 that he filed with Legal Counsel, U.S. Department of Veterans Affairs Legal Counsel, Jeffrey Stacey, 155 van Gordon, Suite 551, Lakewood, CO 80228.

11... It is important to note in Plaintiff Kenneth MacKenzie's Supreme Court Petition For Writ Of Certiorari, filed 28 Dec 2016, Plaintiff Kenneth MacKenzie and the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca did make crime complaints against Muammar Gaddafi,  made crime complaints against the US Justice Department and made crime complaints against the US State Department in said US government departments' rogue US employee criminal wrongdoing associated with Gaddafi's criminal enterprises 18 U.S. Code § 1513 - Retaliating Against A Witness, Victim, Or An Informant .

12.. While, USVAMC DeBakey Hospital might seem to be an unlikely place to find incidents of government employee applied 1513 Retaliation, when the correlative  elements of the 18 USC crime violations that exist separately outside conspired criminal intent, but within the actual depraved wrongdoing negligence of the administrative operations of VA Hospitals, then the wrongdoing elements of 1513 Retaliation can be understood and described as correlatives of Executive Branch negligence that reaches a depraved negligence level as said negligence operates from the applied behavior of government employees who seem to believe they must stand at opposing positions against US citizen terrorism victims who litigate against treasonable 28 USC FSIA prohibitions to sue terrorists and terrorist supporting states in opposition against the Political positions of US President Barak Obama who publically stated  {1} he did not favor such lawsuits, {2} publically stated   he opposed JASTA, {13}Actually vetoed the JASTA legislation of the US Congress, {4} thereby creating an atmosphere in US Executive Branch Departments that directly and indirectly influenced US Executive Branch employees who "blacklisted" the Menchaca Family's requests for 18 USC 3521 – Relocation & Protection – and  "blacklisted" the Children, Women, and men of the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca somewhat analogously to US Solicitor General Elana Kagan's denial of 18 USC 3521 – Relocation & Protection – when she filed her "No Contest" Document with the United States Supreme Court in 2009 that operated as Kagan' s denial of 18 USC 3521 – Relocation & Protection – that operated to expose to Jihad terrorists in the US, the Children, Women, and men of the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca

13.(a)..  Issue: The family of PFC Christian Menchaca has suffered "effective US government employee retaliation whereby US Justice Department under the Bush and Obama Administrations applied denial of 18 USC § 3521" and further denied 18 USC § 3521" in violation of 18 USC 1513, wherein "intent" of any government employee perpetrator is not an issue of question determining that a violation of 18 USC

did occur. In essence, even if US Solicitor General Elana Kagan did not meticulously design a violation of 18 USC 1513, all of the elements of 18 USC 1513 were present in her denial of 18 USC 3521 when she denied provision of 18 USC 3521 for the al Queda written death threats against the Family of PFC Christian Menchaca. the question of "intent" is not a matter of important consideration to establish that the "person" did participate in violation of 18 USC 1513 either as "US Government Employee Actor" or "US Government Employee *Perpetrator*"

14... (a) Issue: In applying "probable cause" to establish that a "US Government Employee Actor" did participate in violation of 18 USC 1513, the question of "intent" is not a matter of important consideration to establish that the "person" did participate in violation of 18 USC 1513 either as "US Government Employee Actor" or "US Government Employee *Perpetrator*"

 (b) Issue: In applying "probable cause" to establish that a "person" did participate in violation of 18 USC 1513, the question of Actor "intent" is not a matter of consideration to establish that the "person" did participate in violation of 18 USC 1513. The question of "intent" is not a matter of important consideration to establish that the "person" did participate in violation of 18 USC 1513 either as "US Government Employee Actor" or "US Government Employee *Perpetrator*"

(c) Issue: Thus, the elements of 18 USC crime violations are present in Plaintiffs' described crime complaints, and the wrongdoing is visible, but the intent of US government Actor-participants is not visible. Thus, US government Actor-participants are able to operate the same wrongdoing repeatedly without being challenged on their wrongdoing of Depraved inconsideration-indifference as US Title 28 FSIA inhibits lawfirms from filing suits to challenge US Title 28 FSIA poison.

.15..Depraved Indifference Law and Legal Definition:. To constitute depraved indifference, the defendant's conduct must be 'so wanton, so deficient in a moral sense of concern, so lacking in regard for the life or lives

of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes a crime.

.{a}..What distinguishes the USVAMC DeBakey Hospital Wrongdoer's behavior is that the wrongdoers have been ignored by the administration of USVAMC to such an extent that USVAMC DeBakey Hospital Wrongdoer's behavior can be compared to the wrongdoing reported by CNN of the USVAMC in Phoenix Arizona where US Veterans were repeatedly denied timely Cancer medical Care, which contributed to their Cancer deaths.

**.16..Issue: The apparent US National policy of "conciliation" with states such as  Libya that support terrorism has become a policy that also includes a US policy of US Executive Branch and US Courts in applying non-support of US citizens who sue terrorists. Thus, the US Title 28 FSIA immunized Dictators – Gaddafi - and Terrorism supporting states – Libya and Others – always have a pre-ordained  "win" position, no matter how unjust, even if immunized  Dictators – Gaddafi - and Terrorism supporting states  have violated human rights and stand as immune from lawsuits filed by victims of terrorism. Operative Terrorist There is more than sufficient "Probable Cause" to allege Terrorism Sympathizers are working as employees of DeBakey Hospital,USVAMC, Houston, Texas, paid by funds provisioned by Defendant  Libya Terrorist, Prime Minister Muammar Gaddafi of Libya (deceased), for the damages all Plaintiffs  suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of SIXTY BILLION ($60,000,000,000.00) DOLLARS for Christina Menchaca {US Army PFC Kristian Menchaca's widow}, Issac Menchaca {US Army PFC Kristian Menchaca's adopted Son},   Maria Guadalupe Vasquez {US Army PFC Kristian Menchaca's mother }, Julio Cesar Vasquez {US Army PFC Kristian Menchaca's brother}, Kenneth MacKenzie {US Army PFC Kristian Menchaca's Uncle in-law married to Kristian's Aunt Julieta}, and Julieta Vasquez-MacKenzie.  {US Army PFC Kristian Menchaca's  Aunt Julieta}**

**.17... Plaintiff Kenneth MacKenzie {1} incorporates, herein, his Petition For Writ Of Certiorari AS IF FULLY SET FORTH, HEREIN, that he filed In The United States Supreme Court, 28 Dec 2016, docket number not yet issued, {2}** incorporates, herein, his Appeal in the Fifth Circuit Court of Appeals, New Orleans LA, Case: 15-20667, that he filed 2016,

**.18..**Plaintifs **incorporate herein Kenneth MacKenzie's Lawsuit Complaint that he filed in United States District Court for the Southern District of Texas, File No. Misc. Action No. 4:15-MC-01974, dismissed 30 Sep 2016, all incorporated, herein, as if fully set forth in this Claim For Damages, Injury, or Death.**

**.19..** Plaintifs **incorporate herein, Kenneth MacKenzie's** Lawsuit Complaint including all Claims that he previously filed on US Claim Form 95 that he filed with Legal Counsel, U.S. Department of Veterans Affairs Legal Counsel, Jeffrey Stacey, 155 van Gordon, Suite 551, Lakewood, CO 80228

**.20... It is important to note** in Plaintiff Kenneth MacKenzie's Supreme Court Petition For Writ Of Certiorari, filed 28 Dec 2016, Plaintiff Kenneth MacKenzie and the **al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca did make crime complaints against Muammar Gaddafi, made crime complaints against the US Justice Department and made crime complaints against the US State Department in said US government departments' rogue US employee criminal wrongdoing associated with Gaddafi's criminal enterprises 18 U.S. Code § 1513 - Retaliating Against A Witness, Victim, Or An Informant .**

**.21..**While, USVAMC DeBakey Hospital **might seem to be an unlikely place to find incidents of government employee applied 1513 Retaliation, when the correlative elements of the 18 USC crime violations that exist separately outside conspired criminal intent, but within the actual depraved wrongdoing negligence of the administrative operations of VA Hospitals, then the wrongdoing elements of 1513 Retaliation can be understood and described as correlatives of Executive Branch negligence that reaches a depraved negligence level as said negligence operates from the applied behavior of**

government employees who seem to believe they must stand at opposing positions against US citizen

terrorism victims who litigate against treasonable 28 USC FSIA prohibitions to sue terrorists and

terrorist supporting states in opposition against the Political positions of US President Barak Obama

who publically stated  {1} he did not favor such lawsuits, {2} publically stated   he opposed JASTA,

{3}Actually vetoed the JASTA legislation of the US Congress, {4} thereby creating an atmosphere in US

Executive Branch Departments that directly and indirectly influenced US Executive Branch employees

who "blacklisted" the Menchaca Family's requests for 18 USC 3521 – Relocation & Protection – and

"blacklisted" the Children, Women, and men of the al- Queda-Terrorism death-threatened Family of

al- Queda-tortured-to-death US Army PFC Christian Menchaca somewhat analogously to US

Department of Justice denial of 18 USC 3521 – Relocation & Protection – during the Menchaca Family

litigation in United States Supreme Court in 2009 that operated as denial of 18 USC 3521 – Relocation

& Protection – that operated to expose as targets to Jihad terrorists in the US, the family Children,

Women, and men of the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death

US Army PFC Christian Menchaca

.22..Issue: The family of PFC Christian Menchaca has suffered "effective US government employee

retaliation whereby US Justice Department  applied denial of 18 USC § 3521" in support of US Title 28

FSIA and applied 18 USC § 3521" in violation of 18 USC 1513, wherein "intent" of any government

employee perpetrator is not an issue of question determining that a violation of 18 USC did occur. In

essence, even if US Solicitor General did not meticulously design a violation of 18 USC 1513, all of the

elements of 18 USC 1513 were present in denial of 18 USC 3521 when US Justice Department denied

provision of 18 USC 3521 for the al Queda written death threats against the Family of PFC Christian

Menchaca.

.23..To the Family of PFC Christian Menchaca,  the question of "intent" is not a matter of important

consideration to establish that the "person" did participate in violation of 18 USC 1513 either as "US

Government Employee Actor" or "US Government Employee *Perpetrator*"

.24..Issue: In applying "probable cause" to establish that a "US Government Employee Actor" did

participate in violation of 18 USC 1513, the question of "intent" is not a matter of important

consideration to establish that the "person" did participate in violation of 18 USC 1513,  either as "US

Government Employee Actor" or "US Government Employee *Perpetrator*"

.25.. (a) Issue: In applying "probable cause" to establish that a "person" did participate in violation of

18 USC 1513, the question of Actor "intent" is not a matter of consideration to establish that the

"person" did participate in violation of 18 USC 1513. The question of "intent" is not a matter of

important consideration to establish that the "person" did participate in violation of 18 USC 1513 either

as "US Government Employee Actor" or "US Government Employee *Perpetrator*"

.26..Issue:  Thus, the elements of 18 USC crime violations are present in Plaintiffs' described crime

complaints, and the wrongdoing is visible, but the intent of US government Actor-participants is not

visible. Thus, US government Actor-participants are able to operate the same wrongdoing repeatedly

without being challenged on their wrongdoing of Depraved inconsideration-indifference as US Title 28

FSIA inhibits lawfirms from filing suits to challenge US Title 28 FSIA poison.

.27..**Depraved Indifference Law and Legal Definition:.** To constitute depraved indifference, the defendant's

conduct must be 'so wanton, so deficient in a moral sense of concern, so lacking in regard for the life or lives

of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a

person who intentionally causes a crime.

.28..What distinguishes the USVAMC DeBakey Hospital Wrongdoer's behavior is that the wrongdoers have

been ignored by the administration of USVAMC Director to such an extent that USVAMC DeBakey Hospital

Wrongdoer's behavior can be compared to the wrongdoing reported by CNN of the USVAMC in Phoenix

**Pg 21**

Arizona where US Veterans were repeatedly denied timely Cancer medical Care, which contributed to their Cancer deaths.

**.29..Issue: The apparent US National policy of "conciliation" with states such as Libya that support terrorism has become a policy that also includes a US policy of US Executive Branch and US Courts in applying non-support of US citizens who sue terrorists. Thus, the US Title 28 FSIA immunized Dictators – Gaddafi - and Terrorism supporting states – Libya– always have a pre-ordained "win" position, no matter how unjust, even if immunized Dictators – Gaddafi - and Terrorism supporting states have violated human rights and stand as immune from lawsuits filed by victims of terrorism.**

**.30.. FBI Directors Mueller and FBI Director Comey both ignored the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca in FBI Directors Mueller's and FBI Director Comey's denial of 18 USC 3521 – Relocation & Protection – that operated to expose as targets Jihad terrorists in the US, the family Children, Women, and men of the al-Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca. Both FBI Director Mueller and FBI Director Comey exposed the Menchaca Family to Terrorism increased likelihood of terrorism attack to make Terrorism-retaliation-attack-examples of Children, Women, and men of the al- Queda-Terrorism death-threatened Family of al- Queda and Gaddafi's Libya al-Shura-tortured-to-death US Army PFC Christian Menchaca..**

**TABLE OF CONTENTS PART I DENIAL OF PROTECTION**

**.31..- The U.S. Justice Department was wrongfully operated by the U.S. Attorney General and Justice Department in a "Nonfeasant-Mode" ("government-'structured-and-operated'-doing-of-nothing") to avoid prosecution of certain U.S. Code Title 18 Patriot Act Counter-terrorism and RICO Act crimes in avoiding presentment of witness testimony and litigation of crime-indictment actions before United States Grand Juries.**

.32..  The FBI, under FBI Director Robert Mueller, avoided an "in-depth" investigations of terrorism

acts that ignored the terrorists, Doshkar Tsarnaev and Tamerlan Tsarnaev, prior to their perpetrated

mass-murder bombing in Boston, USA.

.33..As a consequence of several failures of the FBI to more competently address terrorism issues in the

United states and failures of the FBI to effectively pursue and seek prosecution against the terrorists,

Doshkar Tsarnaev and Tamerlan Tsarnaev, prior to their perpetrated mass-murder bombing in

Boston, USA, FBI Director Robert Mueller left the FBI and was replaced with new FBI Director James

B. Comey.

.34..FBI denial of 18 USC 3521 did set up a condition of fright and fear of Terrorism Militias operating from

Mexico into Texas, operating as small Militia operations out of various US VAMC Hospitals in the USA,

.35..The current terrorism threat level in Texas is "elevated" as the result of potential danger from

international terror organizations like ISIS and narcotics-trafficking Mexican cartels, according to the

just released 2017 Texas Public Safety Threat Overview.

.36..The report was issued Friday by the <u>Texas Department of Public Safety</u>. DPS officials said they

drew their conclusions after analyzing data and the perspective of several law enforcement and security

agencies.

.37.."Protecting Texans from the full scope of public safety and homeland security threats is the

foremost goal of DPS; and, the department works at all levels of government to prepare for the

unthinkable," DPS Director <u>Steven McCraw</u> said in a statement.

.38..The report says the issues of terrorism and security along the Texas-Mexico border are linked as

terrorists from countries like Iraq enter global migration flows.

.39.."We are concerned about the challenges associated with the security vetting of Syrian war refugees or asylum seekers who are resettled in Texas, namely that derogatory security information about individuals is inaccessible or nonexistent," the report states.

.40..The DPS analysts said the lack of information could leave the state vulnerable to terrorists who enter Texas posing as "authentic refugees."

.41.."In the past two years, federal authorities have arrested more than 90 ISIS supporters inside the United States, and have broken up dozens of plots among them to commit violent acts inside the country," the report states.

.42..Also noted in the report is the threat posed to Texas residents by criminal organizations, such as drug cartels. Although the largest concentrations of gang activity tend to be focused in metropolitan areas, DPS analysts said they are tracking gang members in the surrounding suburbs and even rural parts of Texas. Gang activity is prevalent in some Texas border counties and many of the criminal organizations are involved in cross-border narcotics trafficking.

Human trafficking was cited by the DPS analysts as being the fastest growing organized crime business in Texas.

.43.."All eight of the major Mexican cartels operate in Texas and they have enlisted transnational and stateside gangs to support their drug and human smuggling and human trafficking operations on both side of the border," the report states.

.44..Texans also face an array of dangers other than those from terrorist gangs or drug-trafficking cartels. In September 2014, Thomas Duncan, 45, tested positive for the Ebola virus at a hospital in Dallas - the first case diagnosed in the United States.

.45.."The virus' emergence served as a reminder that foreign-borne diseases can be brought to Texas," the report states.

.46..DPS officials said they also continue to be concerned about the potential for a successful cyber attack on the state's critical infrastructure.

.47..We "will continue working with our law enforcement partners to prevent, respond to and recover from all potential threats facing our state," McCraw said.

.48..Terrorism conditions evident in Texas, USA, and Mexico,  2006 to 2018:

Unfortunately, Americans continue to live under the threat of terrorism. Houston represents a major economic and social center for the nation, and as such, has the potential to be a major target for terrorist groups bent on bringing down the American economy and way of life.

.49..The Report titled Terrorism in America After 9/11 mentions broad trends in the jihadist terrorist threat facing the United States that have emerged over the last 15 years.

Since 9/11, hundreds of Americans and people residing inside the United States have been charged with jihadist terrorism or related crimes, or have died before being charged but were widely reported to have engaged in jihadist criminal activity. Since 9/11, hundreds of Americans and people residing inside the United States have been charged with jihadist terrorism or related crimes, or have died before being charged but were widely reported to have engaged in jihadist criminal activity.

.50..In the post-9/11 era, conventional wisdom holds that the jihadist threat is foreign. The conventional wisdom is understandable; after all it was 19 Arab hijackers who infiltrated the United States and conducted the 9/11 attacks. Yet today, as Anwar al-Awlaki, the American born cleric who became a leader in Al Qaeda in the Arabian Peninsula, put it in a 2010 post, "Jihad is becoming as American as apple pie." Far from being foreign infiltrators, the large majority of jihadist terrorists in the United States have been American citizens or legal residents. **Moreover, while a range of citizenship statuses are represented, every jihadist who conducted a lethal attack inside the United States since 9/11 was a citizen or legal resident**. See: https://www.newamerica.org/in-depth/terrorism-in-america/who-are-terrorists/

.51..The Drug Cartels of Mexico, affiliated with al Queda and ISIS Terrorists, do daily drug trade using Texas as a drug thoroughfare through Houston to Washington and New York.

.52..Alleged denial of 18 USC 3521 wrongdoing of US Department of Justice FBI Directors Mueller and Comey in their denials for provision 18 USC 3521 for Terrorism Victim Families who have suffered the loss of a Family member tortured to death or violently murdered by terrorists.

.53..Alleged wrongdoing of US Department of Justice FBI Directors Mueller and Comey in their denials for provision 18 USC 3521 for Terrorism Victim Families who have suffered the loss of a Family member tortured to death or violently murdered by terrorists.

.54..In consideration that many hospitals in U.S. Department of Veterans Affairs have an unsavory reputation as center stage for dead Veterans denied life-saving medical care, then it is understandable that members of the general public would suspect that these hospitals known to have employees comprised of un-vetted foreign citizens from countries hostile to the USA would have terrorism sympathizers within their employee populations.

.55..Population ratios of un-vetted foreign alien citizens at USVAMC Hospitals

populated with un-vetted foreign alien citizens from alien countries hostile to the USA {Immigration un-vetted foreign alien citizens and Psychiatric un-tested foreign alien citizens }.

USVAMC Hospitals are potential concentrations of Terrorist Sympathizers

Wrong doing employees of Defendant, U.S. Department of Veterans Affairs have created and caused more than 300,000 deaths of Veteran Medical Patients in U.S. Department of Veterans Affairs during the past 18 years; and, this situation is sufficient to cite that U.S. Department of Veterans Affairs has been populated with un-vetted foreign alien citizens from alien countries hostile to the USA {Immigration un-vetted foreign alien citizens and Psychiatric un-tested foreign alien citizens }.

.56..Both federal US Grand Juries and State Grand Juries must apply Grand jury investigation Hearings to determine the crime violations associated with these conditions at U.S. Department of Veterans Affairs locations in Texas and throughout the USA to determine if U.S. Department of Veterans Affairs locations. Particularly USVAMC Hospitals are potential concentrations of Terrorist Sympathizers whose numbers represent a Life-destruction threat to both Veterans and the local state community of state residents surrounding the U.S. Department of Veterans Affairs locations of question.

.57..The 300,000 Veterans who died as a result of denied medical care at U.S. Department of Veterans Affairs indicates that there is more than enough probable cause to allege that the many criminal offenses perpetrated to cause the 300,000 US Veterans deaths came from efforts of a sizable and measurable population of Criminals or Terrorist Sympathizers within the employee structure of un-vetted foreign citizens from countries hostile to the USA at US VA Medical Centers. It is entirely likely that these un-vetted foreign citizens have personality disorders that have not yet been evaluated with psychiatric medical exams at the US Department of Veterans Affairs or at other non-VA medical locations.

.58..Thus, un-vetted foreign citizens from countries hostile to the USA at US VA Medical Centers represent a potentially life-destructive dimension against Veteran Patients

.59..The point is that it is true that a large population of wrongdoers within the employee structure of un-vetted foreign citizens from countries hostile to the USA at US VA Medical Centers are handling the clerical transactions related to Veterans medical health care that FBI police investigations will reveal that many of these un-vetted foreign citizens from countries hostile to the USA are directly linked to said 300,000 deaths cited by Presidential Candidate Donald Trump in 2015. Un-vetted foreign citizens from countries hostile to the USA handling the clerical transactions related to Veterans medical health

care gives rise to suspicions that Criminals or Terrorist Sympathizers are operating within this large

group of Un-vetted foreign citizens from countries hostile to the USA. Law Enforcement investigations

and Grand Jury Hearings are necessary to establish how such widespread wrongdoing of denying US

VA Medical care could produce {1} more dead US Military Veterans than US Military troops were

killed in combat operations in World War 1, {2} more dead US Military Veterans than US Military

troops were killed in combat operations in World War 2, {3} more dead US Military Veterans than US

Military troops were killed in US combat operations of the Korean War, {4} more dead US Military

Veterans than US Military troops were killed in US combat operations in the Vietnam War.

.60..The 300,000 Veterans who died as a result of denied medical care at U.S. Department of Veterans

Affairs indicates that the 300,000 dead Veterans is on a scale comparable to the Nazi Auschwitz Death

Camp Hospitals of WW2 operated by Germany.

.61..The 50,000 Mara Salvatrucha army is raping women and increasing mass Murders across the

United States as they're slaughtering men, women, children, and infants. These foreign Criminals have

invaded the USA under the Obama Administration lax enforcement of US  Immigration laws.

.62..Now, of course, you haven't heard much about any of this from CNN or MSNBC. Not even Fox

News covers all the crimes being inflicted in the US by Terrorism Militias inflicting, this terrorism

occurring in front of our eyes.

.63..Plaintiff Kenneth MacKenzie {1} incorporates, herein, his Petition For Writ Of Certiorari that he

filed In The United States Supreme Court, 28 Dec 2016, docket number not yet issued, {2} incorporates,

herein, his Appeal in the Fifth Circuit Court of Appeals, New Orleans LA, Case: 15-20667, that he filed 2016,

.64..incorporates herein his Lawsuit Complaint that he filed in United States District Court for the Southern

District of Texas, File No. Misc. Action  No. 4:15-MC-01974, dismissed 30 Sep 2016, all incorporated, herein, as if fully set forth in this Claim For Damages, Injury, or Death.

.65... It is important to note in Plaintiff Kenneth MacKenzie's Supreme Court Petition For Writ Of Certiorari, filed 28 Dec 2016, Plaintiff Kenneth MacKenzie and the **al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca did make crime complaints against Muammar Gaddafi,  made crime complaints against the US Justice Department and made crime complaints against the US State Department in said US government departments' rogue US employee criminal wrongdoing associated with Gaddafi's criminal enterprises 18 U.S. Code § 1513 - Retaliating Against A Witness, Victim, Or An Informant .**

.66... **While, USVAMC DeBakey Hospital might seem to be an unlikely place to find incidents of government employee applied 1513 Retaliation, when the correlative  elements of the 18 USC crime violations that exist separately outside conspired criminal intent, but within the actual depraved wrongdoing negligence of the administrative operations of VA Hospitals, then the wrongdoing elements of 1513 Retaliation can be understood and described as correlatives of Executive Branch negligence that reaches a depraved negligence level as said negligence operates from the applied behavior of government employees who seem to believe they must stand at opposing positions against US citizen terrorism victims who litigate against treasonable 28 USC FSIA prohibitions to sue terrorists and terrorist supporting states in opposition against the Political positions of US President Barak Obama who publically stated  {1} he did not favor such lawsuits, {2} publically stated   he opposed JASTA, {3}Actually vetoed the JASTA legislation of the US Congress, {4} thereby creating an atmosphere in US Executive Branch Departments that directly and indirectly influenced US Executive Branch employees who "blacklisted" the Menchaca Family's requests for 18 USC 3521 – Relocation & Protection – and "blacklisted" the Children, Women, and men of the al- Queda-Terrorism death-threatened Family of**

al- Queda-tortured-to-death US Army PFC Christian Menchaca somewhat analogously to US Solicitor General Elana Kagan's denial of 18 USC 3521 – Relocation & Protection – when she filed her "No Conteswt" Document with the United States Supreme Court in 2009 that operated as Kagan' s denial of 18 USC 3521 – Relocation & Protection – that operated to expose to Jihad terrorists in the US, the Children, Women, and men of the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca

.67..Issue: The family of PFC Christian Menchaca has suffered "effective US government employee retaliation whereby US Solicitor General Elana Kagan applied denial of 18 USC § 3521" in support of US Title 28 FSIA and applied 18 USC § 3521" in violation of 18 USC 1513, wherein "intent" of any government employee perpetrator is not an issue of question determining that a violation of 18 USC did occur. In essence, even if US Solicitor General Elana Kagan did not meticulously design a violation of 18 USC 1513, all of the elements of 18 USC 1513 were present in her denial of 18 USC 3521 when she denied provision of 18 USC 3521 for the al Queda written death threats against the Family of PFC Christian Menchaca. the question of "intent" is not a matter of important consideration to establish that the "person" did participate in violation of 18 USC 1513 either as "US Government Employee Actor" or "US Government Employee *Perpetrator*"

.68..Issue:In applying "probable cause" to establish that a "US Government Employee Actor" did participate in violation of 18 USC 1513, the question of "intent" is not a matter of important consideration to establish that the "person" did participate in violation of 18 USC 1513 either as "US Government Employee Actor" or "US Government Employee *Perpetrator*"

.69.. (a) Issue: In applying "probable cause" to establish that a "person" did participate in violation of 18 USC 1513, the question of Actor "intent" is not a matter of consideration to establish that the "person" did participate in violation of 18 USC 1513. The question of "intent" is not a matter of

important consideration to establish that the "person" did participate in violation of 18 USC 1513 either as "US Government Employee Actor" or "US Government Employee *Perpetrator*"

.70..Issue: Thus, the elements of 18 USC crime violations are present in Plaintiffs' described crime complaints, and the wrongdoing is visible, but the intent of US government Actor-participants is not visible. Thus, US government Actor-participants are able to operate the same wrongdoing repeatedly without being challenged on their wrongdoing of Depraved inconsideration-indifference as US Title 28 FSIA inhibits lawfirms from filing suits to challenge US Title 28 FSIA poison.

.71..**Depraved Indifference Law and Legal Definition:.** To constitute depraved indifference, the defendant's conduct must be 'so wanton, so deficient in a moral sense of concern, so lacking in regard for the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes a crime.

.72..What distinguishes the USVAMC DeBakey Hospital Wrongdoer's behavior is that the wrongdoers have been ignored by the administration of USVAMC Director to such an extent that USVAMC DeBakey Hospital Wrongdoer's behavior can be compared to the wrongdoing reported by CNN of the USVAMC in Phoenix Arizona where US Veterans were repeatedly denied timely Cancer medical Care, which contributed to their Cancer deaths.

.73..Issue: The apparent US National policy of "conciliation" with states such as Libya that support terrorism has become a policy that also includes a US policy of US Executive Branch and US Courts in applying non-support of US citizens who sue terrorists. Thus, the US Title 28 FSIA immunized Dictators – Gaddafi - and Terrorism supporting states – Libya  always have a pre-ordained  "win" position, no matter how unjust, even if immunized  Dictators – Gaddafi - and Terrorism supporting states  have violated human rights and stand as immune from lawsuits filed by victims of terrorism.

.74.. Plaintiffs were denied 18 USC 3521 by US Department of Justice employees apparently in violation

of 18 U.S. Code § 1513 - Retaliating against a witness, victim, or an informant, unconstitutionally applied by US Department of Justice applying criminal wrongdoing in US Department of Justice perverse "retaliation administered by Solicitor Elena Kagan to deny Victim / Witness Relocation and Protection" that becomes visible when the repetitive patterns of {1} US Department of Justice deliberate application of denials of 18 USC 3521 are understood.

. . . .75.. In unpublicized U.S. Terrorist attacks, Plaintiff Kenneth MacKenzie's nephew, Alex Lopez (cousin of PFC Menchaca), and Julieta Vasquez (Aunt of PFC Menchaca)-- were likewise homicidally attacked by terrorists (presumably Islamists comprised of Texas al Qaeda & Texas ISIS then based in Mexico) in a motor vehicle which "ran-them-off-the-road" during each separate homicidal vehicle attack against them in Houston, Texas.

.76.. On 09 Apr 2012, Plaintiff Kenneth MacKenzie's nephew, Alex Lopez (cousin of PFC Menchaca) was attacked by an unknown vehicle while driving his own vehicle and crashed with near fatal injuries on 09 Apr 2012, in Jersey Village, Texas, in Harris County, near Houston, TX. See: Harris, Co Sheriff Report # HC12-75645; SEE: Jersey Village, Texas, Police Department File 120000500. As a consequence, Alex Lopez, Menchaca Family relative, was in a wheelchair for months.

.77.. ...On 28 Jun 2012, at 11:30PM (23:30) Julieta Vasquez-MacKenzie, Aunt of PFC Menchaca, SB on Interstate highway I-45 at I-610, Houston, TX, was homicidally attacked by terrorists in a small high-speed car, unknown driver (presumably operated by Islamists comprised of Texas al Qaeda & / or Texas ISIS based in Mexico), cut her off at high speed causing her to spin around many times at 60 MPH on said Freeway. No collision. See: Harris, Co Sheriff Report # HC12-75645

.78.. ..Plaintiff Menchaca Family members were "terrorist -retaliation- attacked" by terrorists (al-Qaida, et.al.) in ways similar to the terrorist homicide attacks against British Soldier Lee Rigby and terrorist homicide attacks against the U.S. Boston Marathon crowd wherein different weapons were used by terrorist attackers in each homicidal attack event.

.79.. **Terrorist Homicide Weapons: ..British Soldier Lee Rigby was attacked in London by terrorists in a motor vehicle who ran him down and then beheaded him with meat cleavers.**

.80.. **Terrorist Homicide Weapons:..The U.S. Boston Marathon crowd was attacked by explosive bombs.**

.81.. **Terrorist Homicide Weapons: .. Alex Lopez (cousin of PFC Menchaca) and  Julieta Vasquez (Aunt of PFC Menchaca)-- were homicidally attacked by  terrorists in a motor vehicle  who "ran-them-off-the-road" during each separate homicidal vehicle attack against them  in Houston, Texas.**

.82.. .. **Isabel Lopez went to bed about 5 PM, 17 Aug 2016. .Her husband and son found her in bed about 7 PM covered in blood she had vomited apparently while laying on her back. She was unconscious.** Ambulance transported her to **North Cypress Medical Center**, 21214 Northwest Fwy, Houston. She never recovered consciousness and died by 5AM , 18 Aug 2016 at **North Cypress Medical Center** of complications caused by **Pulmonary aspiration** of gastric contents – blood vomit into her lungs. Massive pulmonary **aspiration** of gastric contents carries a very high 62 % mortality rate.

.83. Kenneth MacKenzie was witness many times to Isabel Lopez's often expressed concerns that there was a significant terrorism crime condition in Harris County, Texas and the state and federal government were not paying attention to the terrorism conditions in Texas. She was aware that Terrorism charities, such as the US and local Houston permitted Muslim operated Assa Corp.  had been operating in Houston on Voss St., and that the US Veterans Administration Hospitals had death rates apparently connected to wrongful denials of medical care apparently engineered and caused by **immigrant VA employees who applied** medical neglect and outright denial of appointment times, many of said **immigrant VA employees are "NATURALIZED" u.s. Citizens from** countries known to have a high rate of terrorism issues. Said **immigrant VA employees were not properly "vetted" or "investigated" when allowed by US government to enter the United States. None were given Psychiatric testing to determine if they were a risk working in a health care**

environment. Thus, there is an increased likelihood that such "unvetted" US Department of Veterans Affairs employees are political sympathizers with Terrorism agendas inside the United States and apply their worker positions at US Veterans Hospitals to create fatal conditions for US Veteran Patients at US Veterans Hospitals. More than 300,000 US Veterans have died after being denied US Vaterans Affairs Medical Care.

.84...Isabel Lopez had expressed her fears resulting in nausea of *"butterflies in the stomach"* (dyspepsia) in reaction the terrorism conditions in Houston, Texas as illustrated by the high incidence of Houston Street crime and high death rate of Veterans at Veterans Hospitals such as Houston's DeBakey US Veterans Affairs Hospital, **possibly related to terrorism sympathizing political activity causing wrongdoings at DeBakey** Veterans Affairs  Hospital **by foreign immigrants granted "naturalized" US Citizenship.**

.85..In a 2005 Gallup Poll (U.S.), a national sample of adolescents between the ages of 13 and 17 were asked what they feared the most. The question was open-ended and participants were able to say whatever they wanted. The top ten fears were, in order: {1} terrorist
attacks, {2} spiders, {3} death, {4} failure, {5} war, {6} criminal or gang
violence, {7} being alone, {8} the future, and {9} nuclear war.[10]The fear response
arises from the perception of danger leading to confrontation with or escape
from/avoiding the threat (also known as the fight-or-flight response), which in
extreme cases of fear (horror and terror) can be a freeze response or paralysis. An
irrational fear is called a phobia.

..Signs and symptoms

.86...Many physiological changes in the body are associated with fear, summarized as the fight-or-flight
response. An inborn response for coping with danger, it works by accelerating the breathing rate

(hyperventilation), heart rate, vasoconstriction of the peripheral blood vessels leading to blushing and

vasodilation of the central vessels (pooling), increasing muscle tension including the muscles attached to

each hair follicle to contract and causing "goose bumps", or more clinically, piloerection (making a cold

person warmer or a frightened animal look more impressive), sweating, increased blood glucose

(hyperglycemia), increased serum calcium, increase in white blood cells called neutrophilic leukocytes,

alertness leading to sleep disturbance and *"butterflies in the stomach"* (dyspepsia). This primitive

mechanism may help an organism survive by either running away or fighting the danger.[4] With the

series of physiological changes, the consciousness realizes an emotion of fear.

https://en.wikipedia.org/wiki/Fear ; https://news.gallup.com/poll/212654/terrorism-fears-drive-avoid-crowds.aspx;

https://www.tandfonline.com/action/captchaChallenge?redirectUri=%2Fdoi%2Ffull%2F10.1080%2F1057610903555796%3Fsrc%3Drecsys

Wherefore: Plaintiffs:  {1} Plaintiff  Kenneth MacKenzie, {PL. 1}, 2314 Gentry St., Houston, Texas

77009, brother of Isabel Lopez, representing the Estate of deceased Isabel Lopez,  {2} Plaintiff  Debbie

Gallegos, {PL. 2}, Daughter of Isabel Lopez, {3} Plaintiff  Alex Lopez, {PL. 3}, 11019 Pinecone Ln,

Houston, TX 77041, Son of Isabel Lopez, {4} Plaintiff  Joe Lopez, {PL. 4}, 11019 Pinecone Ln, Houston,

TX 77041, Son of Isabel Lopez, demand that judgment  be entered,  jointly  and  severally, {2}   against  FBI

Director

in the amount of THIRTY BILLION DOLLARS ($30,000,000,000.00)  for all Plaintiffs

the family Children, Women, and Men of the al- Queda-Terrorism death-threatened Family of al-Queda-tortured-to-death US Army PFC Christian Menchaca,

87...Wherefore:

**Count I, 18 USC § 13 Assimilative Crime Act – Depraved Inconsideration Negligence Felonies as Cause Of Wrongful Death, 18 USC § 2339 A - PROVIDING MATERIAL SUPPORT TO TERRORISTS,**

**..Terrorism Money Laundering (Under 28 U.S.C. § 1605A(c) and State Common Law),**

Plaintiffs repeat, re-allege and incorporate  by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein:

**WHEREFORE:**

**Plaintiffs: {1} Plaintiff  Kenneth MacKenzie, {PL. 1}, 2314 Gentry St., Houston, Texas 77009, brother of Isabel Lopez, representing the Estate of deceased Isabel Lopez,  {2} Plaintiff  Debbie Gallegos, {PL. 2}, Daughter of Isabel Lopez, {3} Plaintiff  Alex Lopez, {PL. 3}, 11019 Pinecone Ln, Houston, TX 77041, Son of Isabel Lopez, {4} Plaintiff  Joe Lopez, {PL. 4}, 11019 Pinecone Ln, Houston, TX 77041, Son of Isabel Lopez, {5} Plaintiff  Julieta Vasquez-MacKenzie, {PL. 1}, 2314 Gentry St., Houston, Texas 77009, {hereinafter: {1} Plaintiff  Kenneth MacKenzie, {2} Plaintiff  Debbie Gallegos {3} Plaintiff  Alex Lopez, {4} Plaintiff  Joe Lopez}. {5} Plaintiff  Julieta Vasquez-MacKenzie}demand** that judgment  be entered, jointly  and  severally, **on behalf of all Plaintiffs and on behalf of the estate of Isabel Lopez and on behalf of all Plaintiffs, and demand that judgment be entered, jointly and severally, against** (1) **FBI Director Mueller and FBI Director Comey** (2) **Defendant Money and Estate of Libya Terrorist, Prime Minister Muammar al-Gaddafi of Libya, demands that judgment be entered, jointly and severally, against** (3) Defendant Libya Terrorist estate of Prime Minister Muammar al-Gaddafi of Libya **for the damages Plaintiffs (Menchacas and MacKenzies) suffered, including, but not limited to, pecuniary losses, which include, but are not limited to, the loss of future earnings, and funeral and burial expenses, in the amount of SIXTY BILLION ($60,000,000,000.00) DOLLARS for {1} Plaintiff  Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff  Alex Lopez, {4} Plaintiff  Joe Lopez}. {5} Plaintiff  Julieta Vasquez-MacKenzie ,** individually,

.88.. (1) United States department of Justice and  FBI Directors Mueller and FBI Director Comey, both who ignored the many hundreds of requests for provision of 18 USC § 3521 – Relocation and Protection - sought by Plaintiff Kenneth MacKenzie, Uncle of US Army PFC Christian Menchaca on behalf of al-Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca in  FBI Directors Mueller's and FBI Director Comey's said denials of 18 USC 3521 – Relocation & Protection – that operated to expose al-Queda-Terrorism death-threatened Family of Children, Women, and men of the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca, wherein the denial of  18 USC 3521 – Relocation & Protection FBI Directors Mueller and FBI Director Comey US Army PFC Christian Menchaca as targets to Jihad terrorists in the US, the family of US Army PFC Christian Menchaca suffered as Terrorism Victims of FBI Directors Mueller's and FBI Director Comey's said denials of 18 USC 3521 – Relocation & Protection in situations of Death Threat by Terrorists caused fright and fear of Terrorism Death Threats that eventually led to Isabel Lopez's stomach nausea from fright and fear, which caused her to vomit as many people do when they experience Terrorism Fright and Fear Physiological effects of *"butterflies in the stomach"*  (dyspepsia) in Fright and Fear nausea-reaction to Terrorism Fright and Fear conditions manipulated by terrorism entities and US government applied denials of 18 USC § 3521 simultaneously, terrorists applying death-threat fright and fear, while, US government denied protection of terrorism-Victim children and terrorism-Victim families of terrorist death-threat fright and fear consequences.

.89..The US Justice Department never investigated Kenneth MacKenzie complaints about 18 USC FBI Directors Mueller's and FBI Director Comey's said denials of 18 USC 3521 – Relocation & Protection.

(2) Plaintiffs Kenneth MacKenzie on behalf of all Plaintiffs and the estate of Isabel Lopez and on behalf of all Plaintiffs demand that judgment be entered, jointly and severally, against: FBI Directors Mueller and FBI Director Comey both who ignored the al- Queda-Terrorism death-threatened Family of al-

Queda-tortured-to-death US Army PFC Christian Menchaca in  FBI Directors Mueller's and FBI

Director Comey's denial of 18 USC 3521 – Relocation & Protection – that operated to expose as targets

to Jihad terrorists in the US, the family Children, Women, and men of the al- Queda-Terrorism death-

threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca. Both FBI

Director Mueller and FBI Director Comey exposed the Menchaca Family to Terrorism increased

likelihood of terrorism attack of an attack type that Terrorists operate to make Terrorism-retaliation-

attack-examples of Children, Women, and men of the al- Queda-Terrorism death-threatened Family of

al- Queda and Gaddafi's Libya al-Shura-tortured-to-death US Army PFC Christian Menchaca..

.90.. (3) Wherefore:

Plaintiffs **Kenneth MacKenzie on behalf of all Plaintiffs and the estate of Isabel Lopez and on behalf of**

**all Plaintiffs demand that judgment be entered, jointly and severally, against Defendant  Libya**

**Terrorist, Prime Minister Muammar Gaddafi of Libya, (3) Defendant Personal Representative 'of the**

**Estate of Prime Minister Muammar al-Gaddafi of Libya,** (4) **Defendant Money and Estate of Libya**

**Terrorist, Prime Minister Muammar al-Gaddafi of Libya,** (5) Defendant Libya Terrorist estate of Prime

Minister Muammar al-Gaddafi of Libya **for the damages Plaintiffs  suffered, including, but not limited to,**

**pain, suffering, mental anguish, and pecuniary losses, in the amount of SIXTY BILLION**

**($60,000,000,000.00) DOLLARS for Plaintiffs**

.**91**.. Plaintiffs repeat, re-allege and incorporate by reference those facts and allegations set forth in each of **the**

**foregoing paragraphs and Claim and demand against terrorism and terrorism wrong doing crimes:**

.**89**... **WHEREFORE:**

**Plaintiffs demand** that judgment  be entered, jointly  and  severally, {1}   against

All Defendants including  Defendant { Df. 1}, US Department Of Justice,  U.S. Attorney,  Attorney

General of the United States,  950 Pennsylvania Avenue, NW. Washington, DC 20530-0001, through to

and including Defendant { Df. 34} al Queda, Terrorism Organization of Libya,  Pakistan, Iraq, USA,

Europe, Africa (hereinafter Defendants are referred to as: Df. #1 through Df. #34) in the amount of

SIXTY BILLION DOLLARS ($60,000,000,000.00)  for all Plaintiffs

..WHEREFORE:  Plaintiffs Kenneth MacKenzie on behalf of all Plaintiffs and the estate of Isabel

Lopez and on behalf of all Plaintiffs demand that judgment be entered, jointly and severally, in the

amount of SIXTY BILLION DOLLARS ($60,000,000,000.00)  for all Plaintiffs against:  (1) FBI Director

Mueller and FBI Director Comey, both who ignored the al- Queda-Terrorism death-threatened Family

of al- Queda-tortured-to-death US Army PFC Christian Menchaca in  FBI Directors Mueller's and FBI

Director Comey's said denials of 18 USC 3521 – Relocation & Protection – that operated to expose as

targets to Jihad terrorists in the US, the family Children, Women, and Men of the al- Queda-Terrorism

death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca, and

further: Plaintiffs Kenneth MacKenzie on behalf of all Plaintiffs and the estate of Isabel Lopez and on

behalf of all Plaintiffs demand that judgment be entered, jointly and severally, against: Defendant

{ Df. 9} ESTATE OF DECEASED LIBYA TERRORIST, PRIME MINISTER MUAMMAR AL-

GADDAFI  (Gaddafi violently murdered by Libyan Citizen revolutionaries 30 Oct 2011), a.k.a.:

GHATHAFI, Muammar (a.k.a. AL-GADDAFI, Muammar; a.k.a. AL-QADHAFI, Muammar; a.k.a.

AL-QADHAFI, Muammar Abu Minyar; a.k.a. ELKADDAFI, Muammar; a.k.a. EL-QADDAFI,

Muammar; a.k.a. GADDAFI, Mu'ammar; a.k.a. GADDAFI, Muammar; a.k.a. GADHAFI, Muammar;

a.k.a. GHADAFFI, Muammar Muhammad; a.k.a. QADDAFI, Muammar; a.k.a. QADHAFI,

Muammar); DOB 1942; POB Sirte,  Libya,

and against the Personal Representative Of The Estate Of Prime Minister Muammar Al-Gaddafi Of

Libya as held in possession of Defendant { Df. 6} Goldman Sachs, 1000 Louisiana St. #500, Houston,

**Texas 77002, Phone: 713.654.8400, banking house for Estate of Muammar Gaddafi, Personal Representative Of The Estate Of Prime Minister Muammar Al-Gaddafi Of Libya as also held in possession of Defendant { Df. 7} JP Morgan Banks, USA, 712 Main Street, Houston, TX 77002, Phone: 713.216.3773, 1.800.935.9935, banking house for Estate of Muammar Gaddafi,  Personal Representative Of The Estate Of Prime Minister Muammar Al-Gaddafi Of Libya as also held in possession Defendant { Df. 8} JP Morgan Banks, South Africa,** {{1}} JPMorgan Chase Bank, National Association, Johannesburg Branch operates as a subsidiary of JPMorgan Chase Bank, National Association,  1 Fricker Road  Corner Hurlingham Road  Illovo  Johannesburg,  2196  South Africa **Estate of Muammar Gaddafi,** in the amount of **SIXTY BILLION DOLLARS ($60,000,000,000.00)  for all Plaintiffs.** Said **banking houses of Defendant { Df. 6} Goldman Sachs, Defendant { Df. 7} JP Morgan Banks, USA, and Defendant { Df. 8} JP Morgan Banks, South Africa, who are  investing and holding money for Defendant  Libya Terrorist, Prime Minister Muammar Gaddafi of Libya, (1) Defendant  Libya Terrorist, Prime Minister Muammar Gaddafi of Libya, (2) Defendant Personal Representative 'of the Estate of Prime Minister Muammar al-Gaddafi of Libya,** (3) **Defendant Money and Estate of Libya Terrorist, Prime Minister Muammar al-Gaddafi of Libya,** (4) Defendant Libya Terrorist estate of Prime Minister Muammar al-Gaddafi of Libya **for the damages Plaintiffs  suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of SIXTY BILLION DOLLARS ($60,000,000,000.00)  for all Plaintiffs.**

**.92....Plaintiffs Petition and demand court appointment of independent prosecutor to convene grand jury to hear Plaintiffs' crime complaints regarding US Department of Justice crimes related to denials of 18 USC § 3521 Relocation and Protection, 18 USC §1961 - Obstruction of Justice and 18 USC §1961 – Tampering, and regarding multiple violations of  18 U.S.C. §2339A - Providing material support to terrorists, who, as terrorists, are then able to terrorist attack and murder vulnerable terrorism victims who have "not" been afforded "Relocation" to secure addresses that are anonymous.**

.93.. COUNT II- ASSAULT, (Under 28 U.S.C. § 1605A(c) and State Common Law),

{1} Plaintiff  Kenneth MacKenzie, {2} Plaintiff  Debbie Gallegos {3} Plaintiff  Alex Lopez, {4} Plaintiff

Joe Lopez}. {5} Plaintiff  Julieta Vasquez-MacKenzie repeat, reallege and incorporate by reference

those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein

. . . During said depraved denials of 18 USC 3521 against the families of Kenneth MacKenzie and

Isabel Lopez, the Gaddafi AQI terrorists intentionally and willfully put {1} Plaintiff  Kenneth

MacKenzie, {2} Plaintiff  Debbie Gallegos {3} Plaintiff  Alex Lopez, {4} Plaintiff  Joe Lopez}. {5}

Plaintiff  Julieta Vasquez-MacKenzie in fear for their lives and apprehension of harm and injury as a

direct result of terrorists' actions in the United States by brandishing and firing weapons and explosives

in several states of the United States at various times during the time frame from 2006 to 2016, and the

terrorism mental abuse in violation of 18 USC § 2339 A and 18 USC § 2339 B – Patriot Act Crime

violations and 18 USC  § 1961, et.seq.RICO Act Crime violations that Terrorist Militias in the US did

fear-inflict upon {1} Plaintiff  Kenneth MacKenzie, {2} Plaintiff  Debbie Gallegos {3} Plaintiff  Alex

Lopez, {4} Plaintiff  Joe Lopez}. {5} Plaintiff  Julieta Vasquez-MacKenzie and US News Media reported

, and State Police reported and other US citizen Crime Victims reported US citizen Victims of violent

Crimes related to and caused by terrorists in the USA.

.94.... As a direct and proximate result of the willful, wrongful and intentional acts of al Queda's al-

Zarqawi, Al-Masri and the other AQI terrorists and Muammar al Gaddafi's supported Libyan al

Shura Terrorists from Benghazi, Libya, operating in the United States, Canada, and Mexico in

association and affiliation with Mexican Drug Cartels known as "Zetas," and Sinaloa Cartel, which acts

were materially supported and sponsored by Defendants Libya Terrorist, Prime Minister Muammar

Gaddafi of Libya acting together with al Queda, USA, as well as al Queda, Iraq,  thus, {{1} Plaintiff

Kenneth MacKenzie, {2} Plaintiff  Debbie Gallegos {3} Plaintiff  Alex Lopez, {4} Plaintiff  Joe Lopez}.

{5} Plaintiff  Julieta Vasquez-MacKenzie were victims of fright and fear caused by  terrorists

**intentionally and willfully perpetrating Acts of Terrorism in the United States since the time of the infamous Terrorism atrocity attacks against the New York World Trade center in 9/11, of September 11, 2001. {6} Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez}. {5} Plaintiff Julieta Vasquez-MacKenzie were injured in that they endured extreme mental anguish, mental Fright and Fear of Terrorism physical injury and endured fright and fear suffering, all to their damage.**

 **WHEREFORE**:

 {1} Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez}. {5} Plaintiff Julieta Vasquez-MacKenzie individually, and {1} Plaintiff Kenneth MacKenzie on behalf of the Estate of Isabel Lopez and {1} Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez demand that judgment be entered, jointly and severally, against (1) FBI **Directors Mueller and FBI Director Comey, both who ignored the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca in FBI Directors Mueller's and FBI Director Comey's said denials of 18 USC 3521 – Relocation & Protection – that operated to expose as targets to Jihad terrorists in the US, the family Children, Women, and men of the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca, caused and produced violations of 18 U.S. Code § 2339A - Providing material support to terrorists, and caused and produced violations of 18 U.S. Code § 2339B - Providing material support or resources to designated foreign terrorist organizations;**

.95.... **Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez}. {5} Plaintiff Julieta Vasquez-MacKenzie** , individually, and **{1} Plaintiff Kenneth MacKenzie on behalf of the Estate of Isabel Lopez. And, {1} Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez}. {5} Plaintiff Julieta Vasquez-MacKenzie** demand that judgment be entered, jointly and severally, against **(1) Directors Mueller and FBI**

Director Comey, both who ignored the Muammar-Gaddafi-al-Shura-Terrorists-of-Benghazi, Libya, and ignored al- Queda-Terrorism death-threatened Family of al Shura and al- Queda-tortured-to-death US Army PFC Christian Menchaca in  FBI Directors Mueller's and FBI Director Comey's said denials of 18 USC 3521 – Relocation & Protection, which operated as FBI applied "Depraved  Inconsideration Negligence Assaults," as violations of 18 USC § 13 – Assimilative Crime Act - in the USA against the Families of Isabel Lopez, related by marriage to the family Children, Women, and Men of the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca. Upon the death of Isabel Lopez, denied Victim Protection of 18 USC § 3521 – Relocation & Protection , FBI Directors Mueller's and FBI Director Comey's said denials of 18 USC 3521 – Relocation & Protection did increase from misdemeanor offenses to felony offenses in violation of  18 USC § 13 – Assimilative Crime Act because Isabel Lopez died from FBI Directors Mueller's and FBI Director Comey's said denials of 18 USC 3521 – Relocation & Protection - were a denial of Victim Protection of 18 USC § 3521 – Relocation & Protection.

.96.... **18 USC § 13 – Assimilative Crime Act - Depraved Indifference-Inconsideration**

(a). . **Depraved Indifference-Inconsideration is in violation of 18 USC § 13 – Assimilative Crime Act** because Isabel Lopez died from FBI Directors Mueller's and FBI Director Comey's said depraved denials of 18 USC 3521 – Relocation & Protection. Depraved Indifference-Inconsideration in violation of 18 USC § 13 – Assimilative Crime Act is a prosecutable crime Under State and Federal Laws {under State laws, this crime is termed "Depraved Heart Inconsideration}. If Depraved Indifference results in death, it is 2nd degree murder, which carries a lengthier sentence than "Manslaughter. See:  the often quoted defining statement on "Depraved Inconsideration" laws issued by Judge Moylan, Debettencourt v. State, as this decision by Judge Moylan reads as follows: The cause was argued before MOYLAN, MASON and LISS, JJ. *Alan Hilliard Legum,* with whom was *Rena E. Friedman* on the brief, for appellant. *Alexander L. Cummings, Assistant*

*Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Hollis Raphael, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

**.97.... MOYLAN, J.,** delivered the opinion of the Court. **LISS, J.,** filed a dissenting opinion at page 532*infra.* In <u>United States law</u>, depraved-heart murder, also known as depraved-indifference murder, is an action where a defendant acts with a "depraved indifference" to human life and where such act results in a death. In a depraved-heart murder, defendants commit an act even though they know their act runs an unusually high risk of causing death or serious bodily harm to someone else. If the risk of death or bodily harm is great enough, ignoring it demonstrates a "depraved indifference" to human life and the resulting death is considered to have been committed with <u>malice aforethought</u>. [1][2] In some states, depraved-heart killings constitute <u>second-degree murder</u>,[3] while in others, the act would be charged with varying degrees of <u>manslaughter</u>. If no death results, such an act would generally constitute <u>reckless endangerment</u> (sometimes known as "culpable negligence") and possibly other <u>crimes</u>, such as <u>assault</u>.

Depraved-heart murder is the form of murder that establishes that the willful doing of a dangerous and reckless act with wanton indifference to the consequences and perils involved, is just as blameworthy, and just as worthy of punishment, when the harmful result ensues, as is the express intent to kill itself. This highly blameworthy state of mind is not one of mere negligence. ... It is not merely one even of gross criminal negligence. ... It involves rather the deliberate perpetration of a knowingly dangerous act with reckless and wanton unconcern and indifference as to whether anyone is harmed or not. The common law treats such a state of mind as just as blameworthy, just as anti-social and, therefore, just as truly murderous as the specific intents to kill and to harm. — *Judge Moylan, Debettencourt v. State.* The <u>common law</u> punishes unintentional <u>homicide</u> as <u>murder</u> if the defendant commits an act of gross <u>recklessness</u>. A classic example of depraved-heart murder under the common law is in the case <u>Commonwealth v. Malone</u>, a Pennsylvania case

in which the court affirmed the second-degree murder conviction of a teenager for a death arising from a game of modified <u>Russian roulette</u> in which each player pointed and fired the gun at the other, eventually resulting in the death of one of them.[6]

Depraved-heart murder is the form of murder that establishes that the willful doing of a dangerous and reckless act with wanton indifference to the consequences and perils involved, is just as blameworthy, and just as worthy of punishment, when the harmful result ensues, as is the express intent to kill itself. This highly blameworthy state of mind is not one of mere negligence. ... It is not merely one even of gross criminal negligence. ... It involves rather the deliberate perpetration of a knowingly dangerous act with reckless and wanton unconcern and indifference as to whether anyone is harmed or not. The common law treats such a state of mind as just as blameworthy, just as anti-social and, therefore, just as truly murderous as the specific intents to kill and to harm. — *Judge Moylan, Debettencourt v. State.*

98... **{1} Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez}. {5} Plaintiff Julieta Vasquez-MacKenzie** , individually, and **{1} Plaintiff Kenneth MacKenzie on behalf of the Estate of Isabel Lopez.** demand that judgment be entered, jointly and severally, against:

**(2) Defendant Libya Terrorist, Prime Minister Muammar Gaddafi of Libya, Defendant Personal Representative 'of the Estate of Prime Minister Muammar al-Gaddafi of Libya,** (3) **Defendant Money and Estate of Libya Terrorist, Prime Minister Muammar al-Gaddafi of Libya,** (4) Defendant Libya Terrorist estate of Prime Minister Muammar al-Gaddafi of Libya **for the damages Plaintiffs suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, {1} Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez}. {5} Plaintiff Julieta Vasquez-MacKenzie** , individually, and **{1} Plaintiff Kenneth MacKenzie on behalf of the Estate of Isabel Lopez.** demand that judgment be entered, jointly and severally,

against **(1) against Defendant  Libya Terrorist, Prime Minister Muammar Gaddafi of Libya, (2) against Defendant Personal Representative 'of the Estate of Prime Minister Muammar al-Gaddafi of Libya,** (3) **against Defendant Money and Estate of Libya Terrorist, Prime Minister Muammar al-Gaddafi of Libya,** (4) **against** Defendant Libya Terrorist estate of Prime Minister Muammar al-Gaddafi of Libya **for the damages  Plaintiffs suffered, including, but not limited to, pain, suffering, mental anguish,  and pecuniary losses, in the amount of in the amount of SIXTY BILLION ($60,000,000,000.00) DOLLARS for {1} Plaintiff  Kenneth MacKenzie, {2} Plaintiff  Debbie Gallegos {3} Plaintiff  Alex Lopez, {4} Plaintiff  Joe Lopez}. {5} Plaintiff  Julieta Vasquez-MacKenzie ,** individually,  **and Plaintiff Kenneth MacKenzie on behalf of the Estate of Isabel Lopez and {1} Plaintiff  Kenneth MacKenzie, {2} Plaintiff  Debbie Gallegos {3} Plaintiff  Alex Lopez, {4} Plaintiff  Joe Lopez}. {5} Plaintiff  Julieta Vasquez-MacKenzie ,** individually, **on this Count II, and their costs expended.**

**.99... .Plaintiffs Petition and demand court appointment of independent prosecutor to convene grand jury to hear Plaintiffs' crime complaints regarding US Department of Justice crimes related to denials of 18 USC § 3521 Relocation and Protection, 18 USC §1961 - Obstruction of Justice and 18 USC §1961 – Tampering, and regarding multiple violations of  <u>18 U.S.C. §2339A - Providing material support to terrorists,</u> who, as terrorists, are then able to terrorist attack and murder vulnerable terrorism victims who have "not" been afforded "Relocation" to secure addresses that are anonymous.**

**.100... .  COUNT III- Retaliation, Obstruction of Justice, "retaliation" in violation of USC Title 18 § 1512 - "Tampering" (relating to tampering with a witness, victim, or an informant) USC Title 18 § 1513 – Retaliation (18 USC Crimes that are provisioned under 18 USC with "Extra-Territorial Jurisdiction that may be presented to the jurisdiction of several Treaty law courts throughout the Middle East (Under 28 U.S.C. § 1605A(c) and  State  Common Law).**

**.101... Plaintiffs  repeat, re-allege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.**

.102... . Plaintiffs repeat, re-allege that AQI terrorists and Muammar Gaddafi's paid Benghazi, Libya al Shura Council terrorists willfully, violently and forcefully committed terrorist acts in the United States and Europe and Middle East during their numerous written and verbalized death threats against {1} Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez}. {5} Plaintiff Julieta Vasquez-MacKenzie , individually, with the express purpose of inflicting severe pain and suffering and death. {1} Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez}. {5} Plaintiff Julieta Vasquez-MacKenzie , individually, were targeted for years against their will. The willful, wrongful and intentional acts of AQI, and the willful, wrongful and intentional acts of al Queda's al-Zarqawi, Al-Masri and the other AQI terrorists and the willful, wrongful and intentional acts of the willful, wrongful and intentional acts of Muammar al Gaddafi's supported Libyan al Shura Terrorists from Benghazi, Libya, operating in the United States, Canada, and Mexico in association and affiliation with Mexican Drug Cartels known as "Zetas," and Sinaloa Cartel, which acts were materially supported and sponsored by Defendants Libya Terrorist, Prime Minister Muammar Gaddafi of Libya acting together with al Queda, USA, as well as al Queda, Iraq, which were sponsored by all Defendants -- Defendant Libya Terrorist, Prime Minister Muammar Gaddafi of Libya, acting together with Terrorists --, causing injury to Plaintiffs as set forth above.

.103... . Defendants Prime Minister Muammar Gaddafi of Libya, performed acts within the scope of their office which materially supported and sponsored al-Zarqawi, al-Masri and AQI's terrorist activities, including but, not limited to the kidnapping, torture and murders of Matt Maupin and Kristian Menchaca.

.104... As a direct and proximate result of the willful, wrongful and intentional acts of al-Zarqawi, al-Masri and the other AQI terrorists, which acts were materially, supported and sponsored by

**Defendant Libya Terrorist, Prime Minister Muammar Gaddafi of Libya, the victims, Matt Maupin and Kristian Menchaca were injured in that they endured extreme mental anguish, physical injury and pain and suffering, all to their damage.** Plaintiffs Petition for court appointment of independent prosecutor to convene grand jury to hear Plaintiff's crime complaints regarding crimes related to denials of 18 USC 3521 Relocation and Protection, 18 USC 1961 - Obstruction of Justice and 18 USC 1961 – Tampering, and regarding multiple violations of  18 U.S.C. 2339A - Providing material support to terrorists, who are then able to terrorist attack and murder vulnerable terrorism victims who have "not" been afforded "Relocation" to secure addresses that are anonymous.

**WHEREFORE, {1} Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez}. {5} Plaintiff Julieta Vasquez-MacKenzie ,** individually, **and Plaintiff Kenneth MacKenzie on behalf of the Estate of Isabel Lopez, demand that judgment be entered, jointly and severally, against (1) Defendant Libya Terrorist, Prime Minister Muammar Gaddafi of Libya, (2) Defendant Personal Representative 'of the Estate of Prime Minister Muammar al-Gaddafi of Libya,** (3) **Defendant Money and Estate of Libya Terrorist, Prime Minister Muammar al-Gaddafi of Libya,** (4) Defendant Libya Terrorist estate of Prime Minister Muammar al-Gaddafi of Libya **for the damages Plaintiffs suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of SIXTY BILLION ($60,000,000,000.00) DOLLARS for {1} Plaintiff Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff Alex Lopez, {4} Plaintiff Joe Lopez}. {5} Plaintiff Julieta Vasquez-MacKenzie ,** individually, **on this Count III, and their costs expended.**

**COUNT IV INTENTIONAL INFLICTION, OF EMOTIONAL DISTRESS, INCLUDING SOLATIUM (Under 28 U.S.C. § 1605A(c) and State Common Law) (As to All Plaintiffs).**

**. .105... Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all of the forgoing paragraphs as if fully set forth.**

.106... The denial of 18 USC 3521 is a violation of USC Title 18 § 1512 - "Tampering" (relating to tampering with a witness, victim, or an informant) and also a violation of USC Title 18 § 1513 – Retaliation (18 § 1512 & 18 § 1513 Crimes that are provisioned under 18 USC with "Extra-Territorial Jurisdiction may be presented to the jurisdiction of several Treaty law courts throughout the Middle East. Tampering, Retaliation and 18 U.S.C. § 1503 Obstruction of Justice inflicted by US Justice Department against Plaintiffs including Isabel Lopez, relatives of Terrorism-Tortured-To-Death US Army PFC Kristian Menchaca  , and each and all of the acts set forth above, constitute extreme  and outrageous conduct with the intent to inflict emotional distress, including solatium,  upon Plaintiffs and the members of their families.   Further these acts were undertaken  for the purpose of causing mental duress and suffering, including solatium,  upon the members of their families: . . . . 18 U.S.C. § 1503 - Obstruction of Justice - is the impediment of governmental activities.

.107...  There are a host of federal criminal laws that prohibit obstructions of justice. The six most general outlaw {1} Obstruction Of Judicial Proceedings (18 U.S.C. 1503), {2} Witness Tampering (18 U.S.C. 1512), {3} Witness Retaliation (18 U.S.C. 1513), obstruction of congressional or administrative proceedings (18 U.S.C. 1505), and contempt (a creature of statute, rule and common law).

.108.... As a direct result and proximate result of the willful, wrongful and intentional acts of Defendant  Libya Terrorist, Prime Minister Muammar Gaddafi of Libya, acting together with al-Zarqawi, al-Masri and AQI, which acts were materially supported and sponsored by Prime Minister Muammar Gaddafi of Libya as and supported and financed by Libya Prime Minister Muammar Gaddafi of Libya, against the torture-murder Victims,  {1} Plaintiff  Kenneth MacKenzie, {2} Plaintiff Debbie Gallegos {3} Plaintiff  Alex Lopez, {4} Plaintiff  Joe Lopez}. {5} Plaintiff  Julieta Vasquez-MacKenzie , individually, **and their families, as above set forth, were each caused to suffer permanent and severe emotional distress.**

WHEREFORE, {1} Plaintiff  Kenneth MacKenzie, {2} Plaintiff  Debbie Gallegos {3} Plaintiff  Alex Lopez, {4} Plaintiff  Joe Lopez}. {5} Plaintiff  Julieta Vasquez-MacKenzie , individually, **Plaintiff Kenneth MacKenzie on behalf of the Estate of Isabel Lopez, his sister, demand that judgment be entered, jointly and severally, against**

United States department of Justice and  FBI Directors Mueller and FBI Director Comey, both who ignored participation of Libya Terrorist, Prime Minister Muammar Gaddafi of Libya and the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca in  FBI Directors Mueller's and FBI Director Comey's said denials of 18 USC 3521 – Relocation & Protection – that operated to expose as targets to Jihad terrorists in the US, the family Children, Women, and men of the al- Queda-Terrorism death-threatened Family of al- Queda-tortured-to-death US Army PFC Christian Menchaca, and further demand that judgment be entered, jointly and severally, against

 (1) Defendant  Libya Terrorist, Prime Minister Muammar Gaddafi of Libya, (2) Defendant Personal Representative 'of the Estate of Prime Minister Muammar al-Gaddafi of Libya, (3) Defendant Money and Estate of Libya Terrorist, Prime Minister Muammar al-Gaddafi of Libya, (4) Defendant Libya Terrorist estate of Prime Minister Muammar al-Gaddafi of Libya **for the damages Plaintiffs suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of SIXTY BILLION ($60,000,000,000.00) DOLLARS for Christina Menchaca, Maria Guadalupe Vasquez, Julio Cesar Vasquez, Kenneth MacKenzie and Julieta Vasquez MacKenzie, on this Count IV, and their costs expended;**

.109.... COUNT V- ACTION  FOR WRONGFUL DEATH, (Under 28 U.S.C. § 1605A(c) and State Common  Law and State Statutory Law)
. . 124. {1} Plaintiff  Kenneth MacKenzie, {2} Plaintiff  Debbie Gallegos {3} Plaintiff  Alex Lopez, {4} Plaintiff  Joe Lopez}. {5} Plaintiff  Julieta Vasquez-MacKenzie , individually,  **and Plaintiff Kenneth MacKenzie as the Personal Representative of the Estate of  Isabel Lopez, his sister, repeats, realleges**